UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-22306-CV-SEITZ
(04-20285-CR-SEITZ)
MAGISTRATE JUDGE PATRICK A. WHITE

BRUNO GASPAROTTO,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**REPORT OF**
**MAGISTRATE JUDGE**

## I. Introduction

The movant, a federal prisoner, filed this motion to vacate, pursuant to 28 U.S.C. §2255, challenging the constitutionality of his enhanced sentence as a career offender, entered in **case no. 04-20285-Cr-Seitz**, following the entry of a guilty plea. In support thereof, he relies upon the Supreme Court's decision in <u>Johnson v. United States</u>,[1] 576 U.S. ____, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), made retroactively applicable to cases on collateral review on April 18, 2016, by <u>Welch v. United States</u>, 578 U.S. ____, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016). (<u>Id</u>.).

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the

---

[1]As everyone is well-aware, on June 26, 2015, the United States Supreme Court, in <u>Johnson</u>, held that the Armed Career Criminal Act's (ACCA) residual clause was unconstitutionally vague, and that imposing an enhanced sentence pursuant to that clause thus violates the Constitution's guarantee of due process. In <u>Welch v. United States</u>, 578 U.S. __, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Supreme Court held that <u>Johnson</u> announced a substantive rule that applied retroactively on collateral review.

United States District Courts.

Before the Court for review are the movant's §2255 petition (Cv DE# 1), his objections to a prior report (Cv DE# 11), his amended petition (Cv DE#14), the government's response (Cv DE#15), the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file.[2]

## II.  Claims

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), the movant raises the following grounds for relief in his various filings:

**Claim 1:** His conviction under 18 U.S.C. §924(c) is unlawful under the Supreme Court's decision in Johnson. (Cv DE#11:4-11).

**Claim 2:** He no longer qualifies as a career offender in light of Johnson. (Cv DE#1:4; Cv DE#11:11-15; Cv DE#14:2).

**Claim 3:** Amendment 798 can be applied retroactively to a person, like Petitioner, who was convicted and sentenced before the amendment took effect. (Cv DE#11:15-21; Cv DE#14:1).

## III.  Factual and Procedural Background

---

[2]The court may take judicial notice of its own records in habeas proceedings, McBride v. Sharpe, 25 F.3d 962, 969 (11th Cir. 1994), Allen v. Newsome, 795 F.2d 934, 938 (11th Cir. 1986), together with the state records, which can be found on-line. See Fed.R.Evid. 201; see also, United States v. Glover, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)(citing United States v. Rey, 811 F.2d 1453, 1457 n.5 (11 Cir. 1987)(finding the district court may take judicial notice of the records of inferior courts).

The factual proffer reveals as follows:

Beginning on or about February 12, 2004, Jorge Pelegrin met with an individual known to him as "Juan." Juan was, in fact, an undercover agent ("UC") with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). In an early meeting, the UC explained to Pelegrin that he was a drug courier and wanted assistance robbing the house where he delivered the narcotics and that the robbery would involve 20-30 kilograms of cocaine. Over the course of several tape-recorded meetings, the UC and Pelegrin agreed and planned the robbery. Pelegrin and the UC agreed that they would split the cocaine after it was stolen. At the meeting on April 20, 2004, the UC told Pelegrin and Nicky Martinez that the drugs would arrive soon and that should expect to do the robbery when the drugs arrived. The UC met with Pelegrin and Martinez immediately before the robbery to show them the cocaine he was delivering. During the meeting, Martinez told the UC in a tape-recorded conversation that he had done robberies before and hoped this would be his last robbery. He also stated that he had a ski mask for use during the robbery and they had the "tools."

On or about April 21, 2004, the defendants—Jorge Pelegrin, Nicky Martinez, and Bruno Gasparotto (as well as co-defendant Gardin)–traveled to meet "Juan" so the cocaine could be examined before the anticipated robbery. When the conspirators arrived in the designated meeting place in the Kendall area of Miami-Dade County in the Southern District of Florida, they were arrested. Pelegrin and Martinez had left the car to inspect the cocaine when arrested. Gasparotto and Gardin were in the car when they were arrested.

In a subsequent recorded conversation among the defendants in the back of the police van, all the defendants acknowledged that they knew about the guns found in the trunk of the car in which he was a passenger and participated in conversations about what false stories should be told to the police. In a post-arrest interview, Gasparotto stated that his role in the offense was to act as a driver for the other defendants, that he knew there were guns in the trunk, the plan was to rob "20-30 kilos," and that he was offered to be paid for his

3

role in the offense.

The two firearms recovered from the trunk of the
vehicle—a Colt .38 caliber handgun and an FEG 9mm
handgun—were manufactured outside the state of Florida
and traveled in interstate or foreign commerce to reach
Florida.

The defendants undertook these actions knowingly and
willfully and in violation of 21 U.S.C. §846 and 18
U.S.C. §924(c).

(Cr DE# 62, Factual Proffer). The AUSA, defense counsel, and
Petitioner signed the proffer on August 20, 2004. (Id.).

On May 10, 2004, Petitioner was charged with conspiracy to
possess with intent to distribute five or more kilograms of
cocaine, in violation of 21 U.S.C. §§846 and 841(b)(1)(A) (Count
1); attempt to possess with intent to distribute five or more
kilograms of cocaine, in violation of 21 U.S.C. §§846, 841(b)(1)(A)
and 18 U.S.C. §2 (Count 2); conspiracy to commit Hobbs Act Robbery,
in violation of 18 U.S.C. §1951(a) (Count 3); attempted Hobbs Act
Robbery, in violation of 18 U.S.C. §1951(a) (Count 4); conspiracy
to possess a firearm in furtherance of a crime of violence and a
drug trafficking crime, in violation of 18 U.S.C. §924(o) (Count
5); using a firearm in furtherance of a crime of violence and a
drug trafficking crime, as set forth in counts 1, 2, 3, & 4, in
violation of 18 U.S.C. §924(c)(1)(A) (Count 6); and possession of
a firearm by a convicted felon (Count 9). (Cr DE# 18). Petitioner
pled guilty to Counts 1 and 6 pursuant to a plea agreement on
August 20, 2004. (Cr DE# 60).

Prior to sentencing, a Pre-Sentence Investigation report was
issued. Petitioner's base offense level was set at 34 because the
offense involved at least 15 kilograms, but not more than 50
kilograms of cocaine. (PSI ¶26). The base offense level was

4

decreased by three levels based on a mitigating role adjustment, §3B1.2. (Id.).

Pursuant to §4B1.1(a), Petitioner was a **career offender** because he was at least 18 years old at the time of the instant offense, the instant offense was a felony that was a controlled substance offense, and Petitioner had at least two prior felony convictions which constituted "crimes of violence." (PSI ¶32). Specifically, the PSI relied on state court convictions for aggravated assault with a firearm in case no. F94007535, burglary of an unoccupied dwelling in case no. F94033938, aggravated assault with a firearm in case no. F96017364, and burglary of an unoccupied dwelling in case no. F0029983. (PSI ¶¶32,38,43,46,47).

The offense level was decreased by three points for acceptance of responsibility. (PSI ¶33-34). The total offense level was set at 34. (PSI ¶35).

Next, the PSI revealed that the movant had 19 criminal history points, resulting in a criminal history category VI. (PSI ¶51). Furthermore, as a career offender, he automatically had a criminal history category VI, §4B1.1. (PSI ¶52).

Statutorily, as to count one, the minimum term of imprisonment was 10 years and the maximum term was life, 21 U.S.C. §841(b)(1)(A); as to count 6, a term of not less than 5 years was to run consecutively to any other term of imprisonment under 18 U.S.C. §924(c)(1)(A). (PSI ¶94). Based upon a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range was 262 months to 327 months. (PSI ¶95). As to count 6, a term of imprisonment of 60 months was to run consecutive to any other term of imprisonment. (PSI ¶95).

The court sentenced Petitioner to 168 months' imprisonment[3] as to count 1 and to 60 months' imprisonment as to counts 6, to run consecutively for a total of 228 months. (CV DE# 79).

Petitioner appealed, arguing that the district court violated Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. __ (2005) by imposing his sentence under a mandatory sentencing regime. On **October 3, 2005,** the Eleventh Circuit affirmed in part and reversed in part the movant's judgment. (Cr-DE#123). The District Court entered an amended judgment on **November 18, 2005** sentencing the Petitioner to 127 months' imprisonment as to count 1 and to 60 months' imprisonment as to counts 6, to run consecutively for a total of 187 months. (CR DE# 127). No direct appeal was prosecuted. Thus, the judgment became final on **Friday, December 2, 2005,** when the 10-day period for prosecuting a direct appeal expired.[4]

Therefore, for purposes of the federal limitations period, the movant had one year from the time his conviction became final on **Friday, December 2, 2005,** or no later than **Monday, December 4, 2006,** within which to timely file this federal habeas petition. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); see also,

---

[3]The Statement of Reasons reflects that the Court departed downward four levels to reflect Petitioner's minimal role in the offense.

[4]Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999); Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011). On December 1, 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1). The movant was sentenced before the effective date of the amendment, thus he had **ten** days, **excluding** Saturdays and Sundays, within which to file his notice of appeal. See Fed.R.App.P. 26(a)(1)(B).

See <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008)(<u>citing</u> <u>Ferreira v. Sec'y, Dep't of Corr's</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); <u>accord</u> <u>United States v. Hurst</u>, 322 F.3d 1256, 1260-61 (10th Cir. 2003); <u>United States v. Marcello</u>, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means petitioner's limitations period expired on **November 28, 2006.**

After proceedings not relevant to the timeliness issue herein, the movant waited **approximately eleven years** from the time his conviction became final on **December 4, 2005** until he returned to this court, filing the instant motion on **June 16, 2016.**[5]  (Cv-DE#1).

After the Court reviewed the movant's initial §2255 motion (Cv-DE#1), an Order (Cv-DE#5) appointing counsel and setting briefing schedule was entered. The movant, through counsel, filed a motion to stay in light of <u>Beckles v. United States</u>, __ U.S. ___, __ S.Ct. ___, 2017 WL 855781 (U.S. Mar. 6, 2017). (Cv DE# 7). The Undersigned issued a report recommending granting the motion to stay (Cv DE# 8), which the District Court adopted (Cv DE# 9). On

---

[5]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see <u>Fed.R.App.</u> 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

March 6, 2017, the Supreme Court unanimously agreed in <u>Beckles</u> that the United States Sentencing Guidelines were not subject to a void for vagueness challenge. <u>Beckles v. United States</u>, <u>supra</u>. The Undersigned issued a report recommending that the stay be lifted and finding the petition untimely. (Cv DE# 10). This report remains pending. Petitioner, through counsel, filed objections to the report where he raised claims 1 and 2. (Cv DE# 11). The District Court gave Petitioner an opportunity to file an amended petition and re-referred the case to the Undersigned. (Cv DE# 13). Petitioner filed an amended §2255 motion, wherein he reiterated his second claim and raised claim 3, regarding Amendment 798. (Cv DE# 14). The government filed a response thereto. (Cv DE# 15).  The case is now ripe for review.

## IV.  <u>Threshold Issues-Timeliness</u>

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") created a limitation for a motion to vacate. Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one year period of limitations applies to a motion under the section. The one year period runs from the latest of:

> (1)  The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2)  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;
>
> (3)  The date on which the constitutional right asserted was initially recognized

> by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  The date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

See 28 U.S.C. §2255(f). The burden of demonstrating that the AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the movant. See e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

Under §2255(f)(1), as discussed above, the movant's conviction became final on **December 4, 2005,** when time for filing a direct appeal expired. The movant had one year from the time his conviction became final within which to timely file this initial collateral proceeding. The §2255 motion was not filed until **June 16, 2016,** approximately **eleven years** after movant's conviction became final, and long after the one-year federal limitations expired. Consequently, movant is not entitled to statutory tolling of the limitations period. Therefore, movant cannot rely on §2255(f)(1) to establish the timeliness of this motion since approximately **11 years** elapsed from the time the conviction became final until he filed this §2255 motion.

Relying on §2255(f)(3), movant suggests that his §2255 motion is timely because he raises a right to relief based on the Supreme Court's recent decision in Johnson v. United States ___ U.S. ____, 135 S.Ct. 2551, ___ L.Ed.2d ___ (2015), which was decided on **June**

**26, 2015.** Movant claims that, in light of <u>Johnson</u>, he is entitled to consideration of the merits.

As is discussed in more detail below, the movant cannot utilize the <u>Johnson</u> decision to circumvent the statute of limitations because the <u>Johnson</u> decision is not applicable to the movant's sentence. As a result, the instant petition is untimely.

## V. <u>Procedural Default</u>

As a general matter, a criminal defendant must assert an available challenge to a conviction or sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003); <u>see also</u> <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989). It is well-settled that a habeas petitioner can avoid the application of the procedural default rule by establishing objective cause for failing to properly raise the claim and actual prejudice resulting from the alleged constitutional violation. <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (citations omitted); <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010); <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004). Petitioner did not raise any of the issues he raises here on direct appeal.

### a. <u>Cause</u>

To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999). Cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not

reasonably available to counsel." <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>see also</u>, <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984). Here, given movant's allegations, he appears to have shown cause, claiming the <u>Johnson</u> issue was not available at the time of his sentencing.

Cause can also be established by demonstrating that the defendant has a meritorious claim of ineffective assistance of counsel. <u>See</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000). It is well established that ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a §2255 motion regardless of whether they could have been brought on direct appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 503, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); <u>see also</u> <u>United States v. Patterson</u>, 595 F.3d, 1324, 1328 (11th Cir. 2010). <u>See also</u> <u>Rose v. United States</u>, ___ F.3d ___, 2018 WL 2727387, at *8 (11th Cir. June 6, 2018).

### b.  <u>Prejudice</u>

Even if the movant has shown cause, to be entitled to relief, he must also show actual prejudice resulting from the alleged constitutional violation. <u>United States v. Frady</u>, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977). As will be recalled, the movant argues the career offender enhancement and his §924(c) conviction and resultant sentence are unlawful post-<u>Johnson</u>.

Consequently, where the Supreme Court explicitly overrules well-settled precedent, a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of

sentencing or direct appeal. <u>Reed v. Ross</u>, 468 U.S. 1, 17 (1984). That is precisely the circumstance here. The Supreme Court in <u>Johnson</u> overruled precedent, announced a new rule, and then gave retroactive application to that new rule. Under the totality of the circumstances present here, the movant's claim fits squarely within §2255(f) and is thus not procedurally barred from review, but **only** if the <u>Johnson</u> decision is applicable to him. <u>See</u>  <u>Rose v. United States</u>, ___ F.3d ___, 2018 WL 2727387, at *8 (11th Cir. June 6, 2018).

As is explained below, <u>Johnson</u> is inapplicable to all issues raised by Petitioner in this proceeding. As a result, he cannot establish prejudice.

## c.  <u>Fundamental Miscarriage of Justice</u>

The foregoing still does not end the inquiry. If the movant is unable to show cause and prejudice to excuse the procedural default of the claim, another avenue may exist for obtaining review of the merits of the claim. Under exceptional circumstances, a prisoner may obtain federal habeas review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 495-96; <u>see also</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). The actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. <u>Id</u>. at 496; <u>see also</u> <u>Bousley</u>, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)("the miscarriage of justice

exception is concerned with actual as compared to legal innocence"). No such showing has been made here.

Nevertheless, when judicial economy dictates, where the merits of the claim may be reached and readily disposed of, judicial economy has dictated reaching the merits of the claim while acknowledging the procedural default and bar in the alternative.[6] See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n.4 (8th Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.").

## VI. General Legal Principles

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments, pursuant to §2255, are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass

---

[6]Even if a claim is technically unexhausted here, the Court has exercised the discretion now afforded by Section 2255, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

## VII. <u>Discussion</u>[7]

---

[7]To the extent the movant has raised new facts and provided new evidence to the undersigned, for the first time, in his traverse, something which is precluded under federal case law, it has been reviewed and considered herein. However, if the movant again attempts to raise new arguments or grounds for relief or otherwise provides additional evidence "for the first time in an objections to this Report, the district court may [and should] exercise its discretion and decline to consider the argument" or new facts. <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing</u> <u>Williams v. McNeil</u>, 557 F.3d 1287 (11th Cir. 2009); <u>see also</u>, <u>Starks v. United States</u>, 2010

It bears mentioning at the outset that the movant, and not the government, must demonstrate that the <u>Johnson</u> claim is meritorious. The Eleventh Circuit has now settled the issue regarding the burden of proving a <u>Johnson</u> claim in <u>Beeman v. United States</u>, 871 F.3d 1215 (11 Cir. 2017). There, the Eleventh Circuit made clear that the movant, not the government, "bears the burden to prove the claims in his §2255 motion." <u>Beeman</u>, 871 F.3d at 1222 (<u>citing Rivers v. United States</u>, 777 F.3d 1306, 1316 (11 Cir. 2015); <u>LeCroy v. United States</u>, 739 F.3d 1297, 1321 (11 Cir. 2014); <u>Barnes v. United States</u>, 579 F.2d 364, 366 (5 Cir. 1978)("Under Section 2255, [the movant] had the burden of showing that he was entitled to relief."); <u>Coon v. United States</u>, 441 F.2d 279, 280 (5 Cir. 1971)("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief.")). In that regard, the Eleventh Circuit held:

> To prove a <u>Johnson</u> claim, the movant must show that--more likely than not--it was use of the residual clause that led to the sentencing court's enhancement of his sentence. If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause.

<u>Beeman</u>, 871 F.3d at 1221-1222.

In so ruling, the Eleventh Circuit recognized that "[O]ne of the principal functions of [the] AEDPA was to ensure a greater degree of finality for convictions." <u>Beeman</u>, 871 F.3d at 1223

---

WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp.2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

(citations omitted). The court recognized that "[P]utting the burden of proof and persuasion on the Government in a §2255 proceeding to show the absence of a constitutional violation or that an error had no effect on the judgment would undermine the presumption of finality that attaches at the end of the direct appeal process," and "would go a long way toward creating a presumption of non-finality and undermine the important interests that finality protects." Beeman, 871 F.3d at 1223.

Further, the Eleventh Circuit has also made clear in Beeman that:

> [A] Johnson claim and a Descamps claim make two very different assertions. A Johnson claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a Descamps claim asserts that the defendant was incorrectly sentenced as an armed career criminal under the elements or enumerated offenses clause.

Beeman, 871 F.3d at 1220.

In Beeman, the movant's arguments "focused" or raised a Descamps[8] claim, maintaining that his Georgia conviction for aggravated assault could no longer qualify as an aggravated felony under the element clause. Id. However, the movant also raised, what "sounds like a Johnson claim," arguing that the sentencing court erred in relying on the residual clause to determine that his

---

[8] Descamps v. United States, 570 U.S. 254, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). In Descamps, the Supreme Court described "how federal courts should determine whether an offense qualifies as a predicate offender under the ACCA's enumerated offenses and elements clauses." Beeman v. United States, 871 F.2d at 1218)(citing Mathis v. United States, 579 U.S. ___, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016); Descamps, 527, U.S. 2254, 133 S.Ct. 2276; Shepard v. Untied States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).

aggravated assault conviction in Georgia qualified as a crime of violence under the ACCA. The defendant supported his argument, stating that aggravated assault in Georgia had historically qualified as an ACCA predicate under that statute's residual clause." Id.

Under **claim 1**, Petitioner alleges his conviction under 18 U.S.C. §924(c) in unlawful in light of the Supreme Court's decision in Johnson. (Cv DE#11:4-11). The movant argues here that he is actually innocent of the §924(c) conviction.

The indictment provided as follows:

### Count 6

On or about April 21, 2004, in Miami-Dade County, in the Southern District of Florida, the defendant[]

Bruno Gasparotto

did knowingly use and carry a firearm, that is, a FEG 9mm semi-automatic pistol, approximately ten rounds of 9mm ammunition, a Colt .38 caliber revolver, and approximately six rounds of .38 caliber ammunition in furtherance of a **crime of violence** and a **drug trafficking crime**, which are felonies prosecutable in a court of the United States, specifically, violations of Title 18, United States Code, Section 1951(a) and Title 21, United States Code, Section 846, as set forth in **Counts 1, 2, 3, and 4** of the indictment; all in violation of Title 18 United States Code, Sections 924(c)(1)(A) and 2.

(Cr DE# 18) (emphasis added). The government charged Petitioner as follows:

Count 1-conspiracy to possess with intent to distribute five or more kilograms of cocaine, 21 U.S.C. §§846 and 841(b)(1)(A);

17

Count 2–attempt to possess with intent to distribute five or more kilograms of cocaine, 21 U.S.C. §§846, 841(b)(1)(A) and 18 U.S.C. §2;

Count 3–conspiracy to commit Hobbs Act Robbery, 18 U.S.C. §1951(a);

Count 4–attempted Hobbs Act Robbery, 18 U.S.C. §1951(a).

(Id.). Petitioner pled guilty to Counts 1 and 6 pursuant to a plea agreement on August 20, 2004. (Cr DE# 60).

The movant's Johnson argument fails. Although the offense of conviction here, Count 6 of the Indictment, charged the movant with a §924(c) offense, alleging that the movant carried a firearm during both a crime of violence and a drug trafficking offense, the movant pleaded guilty only to carrying and possessing a firearm during and in relation to a drug trafficking offense. See (Cr-DE#60, Plea Agreement, ¶1). Therefore, the movant's §924(c) conviction and resultant sentence remains valid even if Johnson is ever interpreted to invalidate §924(c)'s residual clause.

More importantly, it is also worth noting that the Eleventh Circuit, more recently in Ovalles v. United States, 905 F.3d 1300 (11 Cir. 2018) (en banc) ("Ovalles II"), determined that §924(c)(3)(B)'s residual clause is not unconstitutionally vague under Johnson and its progeny. See In re Garrett, 18-13680-F, 2018 WL 5729835, at *1 (11th Cir. Nov. 2, 2018) (Reiterating that §924(c)(3)(B) is not unconstitutionally vague because it requires a conduct-based instead of a categorical approach)(citing Ovalles II, 905 F.3d at 1253); Mann v. United States, 2018 WL 5310176, at *3 (11th Cir. Oct. 26, 2018). Thus, the Eleventh Circuit has made clear that it "no longer applies the categorical approach in assessing whether an offense qualifies as a crime of violence under §924(c)(3)(B)." See Ovalles II, 905 F.3d at 1253.

18

In so ruling, the Eleventh Circuit in <u>Ovalles II</u> held that the constitutional-doubt canon of statutory construction requires that §924(c)(3)(b) be interpreted to incorporate a conduct-based approach. <u>Ovalles II</u>, 905 F.3d at 1240, 1244, 1251. <u>Ovalles II</u> interpreted §924(c)(3)(B) and set forth a rule of statutory interpretation, not a rule of constitutional law. <u>See id</u>. at 1240, 1244, 1245-48, 1252; <u>see also</u>, <u>United States v. St. Hubert</u>, 2018 WL 5993528, at *8 (11th Cir. Nov. 15, 2018). As noted by the Eleventh Circuit in <u>St. Hubert</u>, "[T]he conduct-based approach adopted in <u>Ovalles II</u> accounts for 'actual, real-world facts of the crime's commission' in determining if that crime qualifies under §924(c)(3)(B)'s residual clause." <u>St. Hubert</u>, 2018 WL 5993528, at *8 (<u>citing</u> <u>Ovalles II</u>, 905 F.3d at 1252-53).

Pursuant to 18 U.S.C. §924(c)(1)(A), "any person who, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to enhanced penalties. <u>See</u> 18 U.S.C. §924(c)(1)(A). Section 924(c)(1)(A) "contains two prongs that can trigger enhanced penalties: (1) the 'uses or carries' a firearm 'during and in relation to' prong, and (2) the 'possesses' a firearm 'in furtherance' prong." <u>United States v. Tyson</u>, 575 Fed. Appx. 843, 844 (11th Cir. 2014) (<u>quoting</u> <u>United States v. Haile</u>, 685 F.3d 1211, 1217 (11th Cir. 2012), <u>cert. den'd</u>, ___ U.S. ___, 133 S.Ct. 1723, 185 L.Ed.2d 785 and ___ U.S. ____, 133 S.Ct. 1724, 185 L.Ed.2d 785 (2013)).

To support a §924(c) conviction, the government is required to establish that "during and in relation to...any drug trafficking crime..., [the defendant] use[d] or carrie[d] a firearm, or ... in furtherance of any such crime, [he] possess[ed] a firearm." 18 U.S.C. §924(c)(1)(A). In order for the possession of a firearm to

be "in furtherance of" a drug trafficking offense, there must be "some nexus between the firearm and the drug selling operation." United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006)(quoting United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002)); United States v. Tyson, 575 Fed.Appx. 843, 844 (11th Cir. 2014) (quoting Smith v. United States, 508 U.S. 223, 227–28, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). The "nexus" "can be established by accessibility of the firearm, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." United States v. Molina, 443 F.3d at 829-830 (internal quotation marks, citation, and ellipses omitted). Further, it must be demonstrated "that the firearm had 'some purpose or effect with respect to the drug trafficking crime' and that its 'presence or involvement' was not the result of accident or coincidence." United States v. Tyson, 575 Fed.Appx. 843, 844 (11th Cir. 2014) (quoting United States v. Timmons, 283 F.3d 1246, 1251 (11th Cir. 2002) (quotation omitted)). In other words, the government must establish "either that the gun facilitated the drug trafficking offense or that it at least had the potential of facilitating the drug trafficking offense." United States v. Tyson, supra.

Section 924(e) defines "serious drug offense," in pertinent part, as a federal drug offense, punishable under the Controlled Substances Act, by a maximum term of 10 years' imprisonment or longer. 18 U.S.C. §924(e)(2)(A). The Eleventh Circuit has made clear that "[A] violation of 21 U.S.C. §841(a)(1) and (b)(1)(D) is a drug trafficking crime because it is a felony punishable under the Controlled Substances Act." United States v. Tyson, 575 Fed.Appx. at 844 (quoting 21 U.S.C. §841). See also, e.g., United States v. Hale, 705 Fed. Appx. 876, 879 (11th Cir. 2017), cert. den'd, ___ U.S. ___, 138 S. Ct. 1030 (2018) (quoting United States v. James, 430 F.3d 1150, 1155 (11th Cir. 2005) (rejecting the

argument that the statutory offense must have as an element an intent to manufacture or distribute the controlled substance), overruled on other grounds by Johnson, ___ U.S. ___, 135 S.Ct. at 2558; United States v. White, 837 F.3d 1225, 1232-35 (explaining that because of the ACCA's use of the word "involving," the statute of conviction need not exactly match the specific acts listed in the ACCA's definition of serious drug offense)).

As previously summarized, the facts adduced at the change of plea proceeding confirms that Petitioner, along with his co-defendants, arranged with a UC, who was posing as a drug courier, to commit armed robbery of 20 to 30 kilograms of cocaine the UC planned to drop off at a drug stash house. The parties to the scheme planned to divide the cocaine afterwards. Petitioner and his co-conspirators drove to a location in Kendall to meet with the UC and inspect the drugs. The conspirators arrived in a car with a Colt .38 caliber handgun and FEG 9mm handgun in the trunk. Petitioner was arrested while waiting in the car. In a subsequent recorded conversation, Petitioner acknowledged that he knew about the guns and the plan was to rob "20-30 kilos" of cocaine.  (Cr DE# 62, Factual Proffer).

It is evident that the firearms in the trunk were to be used in furtherance of the plan to obtain and then distribute drugs taken from the drug stash house. As a result, the movant is not entitled to Johnson relief. In other words, vacatur of his §924(c) judgment is not warranted here.

Under **claim 2**, Petitioner alleges he no longer qualifies as a career offender in light of Johnson. (Cv DE#1:4; Cv DE#11:11-15; Cv DE#14:2).

21

Careful review of the PSI reveals movant was not enhanced as an armed career criminal, but rather as a career offender. The Supreme Court post-<u>Johnson</u> has now made clear that "[b]ecause the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, §4B1.2(a)'s residual clause is not void for vagueness." <u>See</u> <u>Beckles v. United States</u>, ___ U.S. ___, 137 S.Ct. 886, 895 (2017). Consequently, any attempt to raise a <u>Johnson</u> challenge to his career offender enhancement here must fail.

Under **claim 3**, Petitioner alleges Amendment 798 can be applied retroactively to a person, like Petitioner, who was convicted and sentenced before the amendment took effect. (Cv DE#11:15-21; Cv DE#14:1).

Prior to the Amendment 798, USSG §4B1.2 defined "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." USSG §4B1.2(a) (2015) (emphasis added). The italicized portion is known as the residual clause.

Amendment 798 took effect on August 1, 2016. It deleted the residual clause and eliminated burglary of a dwelling from the list of enumerated offenses. <u>See</u> USSG App. C, amend. 798. The Eleventh Circuit recently explained the reasoning behind the amendment as follows:

> The Sentencing Commission explained that it eliminated the residual clause as a matter of policy, noting that the clause implicated many of the concerns cited by the

Supreme Court in <u>Johnson v. United States</u>, ---U.S. ----,
135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (holding that the
residual clause of the Armed Career Criminal Act, 18
U.S.C. §924(e), was unconstitutionally vague). <u>See</u>
U.S.S.G. App. C, amend. 798 (Reasons for Amendment). The
Sentencing Commission further explained that eliminating
the clause would alleviate application difficulties and
uncertainty following <u>Johnson</u>. <u>Id.</u> In eliminating
burglary of a dwelling as an enumerated offense from
§4B1.2(a)(2), the Sentencing Commission noted that
burglary offenses rarely result in physical violence. <u>Id.</u>

<u>United States v. McCalop</u>, 699 Fed.Appx. 851 (2017).

Here, the district court sentenced Petitioner long before the
amendment took effect. As a result, it must be determined whether
the Amendment applied retroactively. Federal courts generally apply
the version of the Guidelines in effect at sentencing. <u>United
States v. Jerchower</u>, 631 F.3d 1181, 1184 (11th Cir. 2011).
Amendments which clarify the Guidelines apply retroactively, while
substantive changes to the Guidelines do not. <u>Id.</u> The Eleventh
Circuit has explained:

In assessing whether an amendment to the Sentencing
Guidelines is substantive or clarifying, we consider
several factors, including whether: (1) the amendment
alters the text of the guideline (suggesting a
substantive change) or the commentary (which, if the
amendment merely supplements rather than alters or
contradicts preexisting commentary, suggests a
clarification); (2) the Commission described the
amendment as clarifying or not; (3) the Commission
included the amendment in the list of retroactive
amendments in § 1B1.10(c) (suggesting a substantive
change); and (4) the amendment overturns circuit
precedent (suggesting a substantive change unless the
amendment clarifies a meaning inherent in the original
guideline).

<u>McCalop</u>, 699 Fed.Appx. at 853-54 (citing <u>Jerchower</u>, 631 F.3d at
1185).

Applying these factors, the Eleventh Circuit expressly held that Amendment 798 was a substantive, rather than clarifying, change. Id. at 854. In so holding, the court noted "the Sentencing Commission deleted an entire provision of the text of the guideline, stated that it was doing so as a matter of policy, removed burglary from the list of enumerated offenses, and declined to include the amendment in the list of retroactive amendments." Id.

Because Amendment 798 is not a clarifying amendment and, as such, is not retroactively applied; this court must apply the guidelines in existence at the time of sentencing. See United States v. Martin, 864 F.3d 1281, 1282 (11th Cir. 2017) (citing Jerchower, 631 F.3d at 1184). The court sentenced Petitioner in 2005, over a decade before the Sentencing Commission voted on Amendment 798. Because it does not apply retroactively, Petitioner is not entitled to relief.

Finally, it should further be noted that this court has considered all of the movant's arguments raised in his §2255 motion. See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013) (citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). This Court is mindful of the Clisby rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. Clisby, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); see Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that Clisby applies to §2255 proceedings). However, nothing in Clisby requires, much less suggests, consideration of claims or arguments raised for the first time in objections. Therefore, to the extent the movant attempts to raise arguments or new claims in objections to this Report, the court should exercise

24

its discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance.[1]

## VIII. **Evidentiary Hearing**

Movant is also not entitled to an evidentiary hearing on the remaining claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he/she would only be entitled to a hearing if his/her allegations, if proved, would establish his/her right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Townsend v. Sain, 372 U.S. 293, 307 (1963); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citing Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979))(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## IX. **Certificate of Appealability**

---

[1]The petitioner is cautioned that any attempt to provide due diligence in objections to this Report may not be considered in the first instance by the district court. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). See 28 U.S.C. §2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## X. Conclusion

Based on the foregoing, it is recommended that the motion to vacate be DENIED as untimely and procedurally barred, and, in the alternative, on the merits; that no certificate of appealability issue; and, that this case be closed. It is further recommended that the March 16, 2017 Report (Cv DE# 10) be VACATED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to

file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790,794 (1989); <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 14th day of December, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Bruno Gasparotto
     Reg. No. 70763-004
     Coleman II-USP
     United States Penitentiary
     Inmate Mail/Parcels
     Post Office Box 1034
     Coleman, FL 33521

     Bonnie B. Phillips-Williams
     Federal Public Defender
     150 W. Flagler St., Suite 1500
     Miami, FL 33130
     305-536-6900
     Email: Bonnie_Phillips-Williams@FD.org

     Robert K. Senior
     United States Attorney's Office
     99 NE 4 Street, 8th Floor
     Miami, FL 33132
     305-961-9291
     Fax: 305-536-4675
     Email: robert.senior@usdoj.gov